IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
PHILADELPHIA DIVISION

| | |
|---|---|
| HERTZ VEHICLES LLC, <br><br> Plaintiff, <br><br> v. <br><br> MVA STORAGE LLC, <br><br> Defendant. | Civil Action No. |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Hertz Vehicles LLC ("Hertz") files this Complaint for Damages and Injunctive

Relief against Defendant MVA Storage LLC ("Defendant") as follows:

## **PARTIES**

1.      Hertz Vehicles LLC is a limited liability company. Its members are Hertz General

Interest LLC and Hertz Vehicle Financing III LLC. The sole member of Hertz General Interest

LLC and Hertz Vehicle Financing III LLC is The Hertz Corporation, a Delaware corporation with

its principal place of business in Florida. Therefore, Hertz Vehicles LLC is a citizen of Delaware

and Florida for purposes of 28 U.S.C. § 1332.[1]

2.      Upon information and belief, Defendant MVA Storage LLC is a domestic limited

liability company formed under the laws of Pennsylvania with its principal place of business at

350 E. Price Street, Philadelphia, PA 19144.

3.      Upon information and belief, the member or members of MVA Storage LLC are

---

[1] The citizenship of a limited liability company (LLC) is determined by the citizenship of each of its members for purposes of diversity jurisdiction. 28 U.S.C. § 1332(a); *see Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010).

citizens of Pennsylvania.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the matter under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.

5.      This Court has personal jurisdiction over Defendant and venue is proper in this District, by reason of the fact that Defendant conducts business in Pennsylvania and/or a substantial part of the events giving rise to Hertz's claims against Defendant occurred in Pennsylvania.

6.      This Court also has personal jurisdiction over Defendants, and venue is proper in this District under 28 U.S.C. § 1391(a) because Defendants have committed and continue to commit tortious acts in and/or related to this State.

## EVENTS GIVING RISE TO THIS ACTION

7.      This is an action for damages and injunctive relief arising from Defendant's wrongful, unlawful, and coercive detention of nine (9) vehicles (collectively, the "Subject Vehicles") owned exclusively by Hertz. Defendant obtained possession of the Subject Vehicles without Hertz's knowledge, authorization, or consent, and failed to provide any notice to Hertz regarding its custody of the Subject Vehicles. Despite Hertz's undisputed ownership and repeated demands for return, Defendant has intentionally refused—and continues to refuse—to release the Subject Vehicles unless Hertz pays exorbitant and unjustified fees.

8.      Hertz brings claims for equitable relief and damages, including an injunction compelling Defendant to immediately return the Subject Vehicles, as well as damages for unlawful and deceptive towing practices, trespass to chattels, and conversion.

9.    Hertz owns and holds title to the nine vehicles that are the subject of this lawsuit:

(1) a gray Kia K4 with vehicle identification number ("VIN") 3KPFT4DE6TE251566 and license plate number 6MAX49 (the "Gray Kia K4") with an estimated present book value of $19,350.00;

(2) a blue Tesla Model 3 with VIN 5YJ3E1EA2NF304199 and license plate number BKT0111 (the "Blue Tesla Model 3"), with an estimated book value of $15,950.00;

(3) a gray Buick Encore GX with VIN KL4AMCSL0TB134740 and license plate number E50WRX (the "Gray Buick Encore GX"), with an estimated present book value of $24,100.00;

(4) an orange Chevrolet Blazer with VIN 3GNKBCR46TS139239 and license plate number 20BLGB (the "Orange Chevrolet Blazer") with an estimated present book value of $25,400.00;

(5) a gray Kia EV6 with VIN KNDC34LA1P5612012 and license plate number 4LYF25 (the "Gray Kia EV6") with an estimated present book value of $20,300.00;

(6) a white Kia K4 with VIN 3KPFT4DE5TE259027 and license plate number MNC3241 (the "White Kia K4") with an estimated present book value of $18,450.00;

(7) a black Tesla Model 3 with VIN 5YJ3E1EAXPF449719 and license plate number BNL2968 (the "Black Tesla Model 3") with an estimated present book value of $23,600.00;

(8) a blue Kia K4 with VIN 3KPFT4DE3TE347218 and license plate number NGE5564 (the "Blue Kia K4") with an estimated present book value of $18,450.00; and

(9) a white Chevrolet Blazer with VIN 3GNKBCR40SS265904 and license plate number L90WBJ (the "White Chevrolet Blazer") with an estimated present book value of $21,900.00.

(collectively, the "Subject Vehicles").

10.    At all relevant times, Hertz was the rightful owner and possessed the title to the Subject Vehicles and the Subject Vehicles were lawfully rented to Hertz customers pursuant to valid rental agreements.

**A.  <u>Defendant's Pattern of Unauthorized Towing and Concealment</u>**

11.    Between approximately May 5, 2026 and June 19, 2026, each of the Subject Vehicles was involved in a motor vehicle accident while in possession of a Hertz customer and, shortly thereafter, came into Defendant's possession.

12.    Upon information and belief, in each instance Defendant arrived at the accident scene shortly after the incident, and in multiple cases before law enforcement arrived.

13.    In no instance, did Hertz, the Hertz customer, or law enforcement contact Defendant to provide services in connection with these accidents.

14.    Hertz customers reported that Defendant showed up at the scene and solicited them to authorize the tow, and in several instances, pressured or coerced the Hertz customer into doing so under stressful accident-scene conditions.

15.    Upon information and belief, Defendant's conduct violated Pennsylvania's Towing and Towing Storage Facility Standards Act, which permits towing only when a tow is requested by a vehicle operator or law enforcement.

16.    Defendant is not, and at no relevant time was, an authorized or approved Hertz towing vendor and Hertz did not contact Defendant with respect to any Subject Vehicle to authorize a tow.

17.    Upon information and belief, no Hertz customer contacted Defendant with respect to any Subject Vehicle to request or authorize a tow.

18.    Upon information and belief, Defendant was not authorized by law enforcement to tow any of the Subject Vehicles.

19.    Defendant transported the Subject Vehicles to its impound yard at 350 E. Price St., Philadelphia, Pennsylvania 19144 ("Defendant's premises"), where they remain today.

20.    Critically, Defendant never notified Hertz that it had taken possession of the Subject

Vehicles, concealing their location and depriving Hertz of any reasonable opportunity to retrieve or assess its property.

21.     Upon information and belief, Defendant engaged in this same unlawful pattern and practice as to each of the Subject Vehicles, intercepting them at or near accident scenes and converting them to its own possession.

B.  **The First and Second Vehicles**

**Gray Kia K4**

22.     On or around May 5, 2026, a driver operating the first Subject Vehicle, the Gray Kia K4, was involved in an accident.

23.     Hertz was not notified by the customer until May 6, 2026, and initially believed the accident occurred that day. The customer abruptly ended the call before further details could be obtained.

24.     The vehicle was due to be returned on May 7, 2026, but was not. Hertz's internal investigation revealed the Gray Kia K4 at Defendant's premises.

**Blue Tesla Model 3**

25.     On May 7, 2026, the same day the Gray Kia K4 was due, Hertz learned that Subject Vehicle the Blue Tesla Model 3 had been involved in an accident on May 6, 2026. Hertz's investigation confirmed that this Subject Vehicle, too, was being held by Defendant at the same location.

26.     On May 11, 2026, Hertz promptly sent written correspondence to Defendant demanding an accounting and immediate release of both Subject Vehicles. Defendant responded by providing invoices that included grossly inflated, unreasonable, and unsupported charges.  A true and correct copy of the May 11, 2026 correspondence and accompanying invoices is attached

at **Exhibit 1[2]**.

27.     With respect to the Gray Kia K4, Defendant demanded the following charges totaling approximately $4,658.00:

- $325 tow fee;

- $415 administrative fee;

- $510 gate fee;

- $346 labor fee;

- $155 car wrap fee;

- $495 release fee;

- $352 wait fee;

- $165 loose parts fee;

- $350 clean up fee;

- $300 miscellaneous fee; and

- $150 per day for storage, plus an additional 8% tax.

28.     The invoice for the Gray Kia K4 contains no basis for any of these changes including details about what work is included with these fees, the purported damages to the vehicles or why these services were needed, pictures of the vehicle either confirming damages or confirming that these services were preformed, or the date from which the storage fees were being calculated.

29.     The invoice for the Blue Tesla Model 3 reflected substantially similar charges totaling approximately $4747.68, which were also inflated and unreasonable.

30.     Those charges included:

---

[2] Certain portions of Defendant's invoices were inadvertently cut off due to formatting issues arising from the PDF conversion of the correspondence. For the Court's convenience, complete and legible copies of the invoices have been included at the end of the Exhibits.

- 6 -

- $325 tow fee;

- $415 administrative fee;

- $510 gate fee;

- $329 labor fee;

- $155 vehicle wrap fee;

- $495 release fee;

- $352 wait fee;

- $165 loose parts fee;

- $350 cleanup fee;

- $300 miscellaneous fee;

- $230 winch fee; and

- $150 per day for storage, plus an additional 8% tax.

31.     Once again, despite repeated requests, Defendant did not provide any explanation or basis for any of these changes including details about what work is included with these fees, the purported damages to the vehicles or why these services were needed, pictures of the vehicle either confirming damages or confirming that these services were preformed, or the date from which the storage fees were being calculated.

32.     Defendant refused to release either the Gray Kia K4 or the Blue Tesla Model 3 unless Hertz paid the full amount of the excessive and unjustified charges.

33.     Hertz did not authorize, approve, or agree to any of the inflated fees demanded by Defendant.

34.     Despite repeated requests, Defendant also refused to provide any pictures of the vehicles, a detailed, itemized accounting substantiating the charges allegedly incurred in connection with the towing and storage of either Subject Vehicle and any documentation

identifying who authorized the tow.

35.    Hertz made good-faith efforts to resolve the dispute and negotiate reasonable charges for the release of the two Subject Vehicles. No agreement was reached and Defendant continued to unlawfully condition release of the two Subject Vehicles on payment of the full, disputed amounts.

36.    Upon information and belief, Defendant continues to accrue storage charges for $150 per day for each vehicle, notwithstanding its refusal to release the Subject Vehicles absent payment of the undisputed and unsupported charges.

### C.  **The Third Vehicle (Gray Buick Encore GX)**

37.    Approximately forty-eight (48) hours later, another customer reported to Hertz that the Gray Buick Encore GX had been involved in an accident on May 13, 2026, and that Defendant had towed the vehicle to Defendant's premises.

38.    Again, Hertz received no notice from Defendant regarding the towing, storage, or condition of the Gray Buick Encore GX.

39.    On May 15, 2026,  Hertz, again contacted Defendant seeking a detailed breakdown of all charges associated with this Subject Vehicle. A true and correct copy of the May 15, 2026 correspondence is attached as **Exhibit 2**.

40.    Defendant responded with another near identical, inflated invoice containing charges substantially similar to those imposed for the prior two Subject Vehicles totaling approximately $3,864.24.

41.    Defendant again refused to release the Gray Buick Encore GX unless Hertz paid the full amount demanded.

42.    Hertz attempted to engage Defendant in further discussions to reach a reasonable

resolution for all three Subject Vehicles. No agreement was reached, and Defendant continued to condition release on payment of all the excessive charges.

43.    As a result, Defendant is presently wrongfully withholding possession of the Gray Kia K4, Blue Tesla Model 3, and Gray Buick Encore GX and continuing to impose storage charges, despite Hertz's repeated demands for their return and Defendant's failure to provide any lawful or reasonable justification for the amounts claimed.

### D.  The Additional Six Vehicles

44.    Between on or about May 24, 2026 and June 19, 2026, Defendant continued and expanded its unlawful course of conduct by taking possession of at least six (6) additional Subject Vehicles from Hertz's rental fleet. Those Subject Vehicles include, the Orange Chevrolet Blazer; the Gray Kia EV6; the White Kia K4; the Black Tesla Model 3; the Blue Kia K4; and the White Chevrolet Blazer (collectively, the "Additional Subject Vehicles")

45.    In each instance, the Additional Subject Vehicles were being lawfully operated by Hertz customers pursuant to valid rental agreements when they were involved in motor vehicle accidents.

46.    After each accident, Hertz's customers notified Hertz of the incident, and Hertz promptly began coordinating its Roadside Assistance Department to implement recovery procedures consistent with its standard business practices.

47.    Upon information and belief, before Hertz or its authorized agents could recover the Additional Subject Vehicles, Defendant appeared at or near the accident scenes, took possession of the Additional Subject Vehicles, and removed them without Hertz's knowledge, authorization, or consent.

48.    Defendant was not an authorized towing vendor for Hertz, was not acting at Hertz's

direction, and had no lawful authority from Hertz to tow, transport, store, detain, or otherwise exercise control over the Additional Subject Vehicles.

49.    Upon information and belief, Defendant was not authorized by law enforcement to tow the Additional Subject Vehicles.

50.    Defendant also again failed to notify Hertz that it had taken custody of any of the Additional Subject Vehicles. By failing to provide notice, Defendant concealed the Additional Subject Vehicles' location from their lawful owner and deprived Hertz of the ability to timely investigate the accidents, inspect the vehicles, assess damages, mitigate losses, or arrange for lawful recovery.

51.    Upon expiration or closure of the applicable rental agreements, Hertz did not receive the Additional Subject Vehicles as required. Therefore, Hertz was forced to conduct its own investigation and ultimately determined that each of the Additional Subject Vehicles had been taken to and was being held at Defendant's premises located at 350 E. Price St., Philadelphia, Pennsylvania 19144.

52.    After locating the Additional Subject Vehicles at Defendant's premises, Hertz requested itemized invoices and documentation substantiating all charges Defendant claimed were owed in connection with the towing, storage, and alleged handling of all the Subject Vehicles. True and correct copies of Hertz's June 3, 2026 correspondence concerning the Orange Chevrolet Blazer, the Gray Kia EV6, the White Kia K4, and the Black Tesla Model 3 are attached as **Exhibits 3[3], 4, 5, and 6,** respectively.

53.    Defendant responded with near identical invoices reflecting the same improper fee structure previously imposed on the earlier vehicles, including inflated, duplicative, unsupported,

---

[3] Hertz requested the charges for the Orange Chevrolet Blazer; however, Defendant inadvertently provided the invoice for the White Kia K4. As a result, Hertz does not currently have the correct invoice for the Orange Chevrolet Blazer.

and/or fictitious charges, none of which were supported by any legitimate documentation or explanation.

54.     Specifically, Defendant charged substantially similar fees for each of the Additional Vehicles, including, among other charges, a $325 tow fee, $415 administrative fee, $510 gate fee, $155 vehicle wrap fee, $495 release fee, $165 loose parts fee, $350 cleanup fee, $300 miscellaneous fee, and $150 per day in storage charges, plus an additional 8% tax.

55.     Based on the six Subject Vehicle invoices produced to Hertz including the daily accrual of Defendant's $150-per day storage fee, Defendant would be demanding approximately $85,755 for the release of those six Subject Vehicles.[4]

56.     Defendant failed and refused to provide any legitimate documentation supporting those charges, including a meaningful itemization, photographs of the vehicles, documentation of services actually performed, proof of authorization for the tow, or any explanation justifying the excessive amounts demanded.

57.     Instead, Defendant continued to assert a blanket demand for payment in full and refused to release the Additional Vehicles unless and until Hertz paid the disputed, inflated, and unsupported charges.

58.     Defendant's conduct with respect to all the Subject Vehicles was not isolated, accidental, or the result of a good-faith misunderstanding. Rather, Defendant's repeated conduct reflects a deliberate and systematic pattern and practice of intercepting Hertz vehicles after accidents, withholding notice from Hertz, concealing the vehicles' location, refusing to provide

---

[4] The amounts demanded continue to increase on a daily basis of approximately $900.00 as a result of the accrual of Defendant's $150 per-day storage fee for each of the six Subject Vehicles. In addition, the amount does not account for three additional vehicles currently in Defendant's possession, as Defendant has not provided Hertz with the corresponding invoices for the Orange Chevrolet Blazer, the Blue Kia K4, and the White Chevrolet Blazer. Accordingly, the amounts referenced herein are subject to change.

substantiating documentation, and exploiting possession of Hertz's property to demand excessive and unjustified payments.

59.    By wrongfully retaining the Subject Vehicles and conditioning their return on Hertz's payment of disputed and unsupported charges, Defendant has intentionally interfered with Hertz's ownership rights and deprived Hertz of the possession, use, and value of its property.

60.    As a direct and proximate result of Defendant's actions, Hertz has suffered substantial damages, including loss of use of the Subject Vehicles, administrative and investigative costs, disruption to its rental fleet operations, and other consequential losses.

61.    Defendant's ongoing detention of the Subject Vehicles also causes continuing and irreparable harm because Hertz remains deprived of its possession and use of its property, Defendant continues to assert accumulating storage charges, and monetary damages alone cannot fully remedy Defendant's continuing interference with Hertz's ownership and possessory rights.

62.    Upon information and belief, Defendant continues to impose storage charges of $150 per day for each Subject Vehicle remaining in its possession, thereby increasing the disputed amount while simultaneously refusing to return the vehicles absent payment of the very charges Hertz disputes.

63.    Upon information and belief, Defendant has a documented history of engaging in similar unlawful, unfair, and deceptive towing practices against Hertz and others, further demonstrating that Defendant's conduct here was knowing, intentional, and part of an ongoing business practice.

## COUNT I – DECLARATORY JUDGMENT

64.    Hertz repeats and re-alleges the allegations contained in the paragraphs above, as if expressly incorporated herein.

65.    Hertz has sole possessory rights in the Subject Vehicles to the exclusion of all other persons.

66.    Hertz never authorized Defendant to take possession of the Subject Vehicles and never signed transfer of ownership documents authorizing the transfer of ownership of the Subject Vehicles to Defendant or any other party.

67.    The Hertz customers renting the Subject Vehicles did not have authority to consent to any services provided by Defendant for the Subject Vehicles on behalf of Hertz. Nor did the customers have authority to allow Defendant to take possession of the Subject Vehicles or to transfer ownership of the Subject Vehicles to Defendant or any other party.

68.    Defendant's detention of the Subject Vehicles is wrongful and in contravention to and in interference with Hertz's rights.

69.    Defendant has nonetheless detained, and continues to detain the Subject Vehicles in contravention to, and in interference with Hertz's rights.

70.    There is accordingly an actual, justiciable controversy between the parties concerning the possessory right to the Subject Vehicles.

71.    A declaratory judgment is necessary to resolve the parties' controversy and finally determine the parties possessory rights to the Subject Vehicles.

72.    Hertz is therefore entitled to a declaratory judgment that: (i) Hertz has and always has had a sole possessory right in the Subject Vehicles to the exclusion of all other persons; (ii) Defendant has never had any possessory right to the Subject Vehicles; (iii) Hertz has no obligation whatsoever to make any payment to Defendant for any storage, towing, repair or related costs; and (iv) Defendant accordingly cannot condition the return of the Subject Vehicles on Hertz's payment of such costs.

## COUNT II - UNFAIR TRADE PRACTICES IN VIOLATION OF 73 P.S.§§ 201-1 – 201-9.2

73.    Hertz repeats and re-alleges the allegations contained in the paragraphs above, as if expressly incorporated herein.

74.    Defendant is a "person" within the meaning of 73 P.S. § 201-2(2) which defines "person" broadly to include natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entities.

75.    Defendant engaged in deceptive acts and unfair trade practices through the acts described in the Complaint. Specifically, Defendants' deceptive acts and unfair trade practices with respect to the initial towing and possession of the Subject Vehicles, lack of notification to Hertz, and the improper and overly excessive charges associated with the towing and impound of the Subject Vehicles.

76.    Defendant has refused to release and retained possession of the Subject Vehicles despite it being undisputed that the Subject Vehicles are owned by Hertz.

77.    Defendant's unfair and deceptive conduct occurred primarily and substantially in Pennsylvania.

78.    Defendant's unfair and deceptive trade practices have caused Hertz damages in an amount to be determined at trial.

79.    Defendant has a pattern and practice of engaging in similar unfair and deceptive conduct with respect to towing and impound of vehicles.

80.    Defendant's unfair and deceptive trade practices have been willful and knowing, and therefore also entitle Hertz to treble damages, attorneys' fees, costs, and injunctive relief requiring the immediate return of all Hertz Subject Vehicles.

## COUNT III - CONVERSION

81.    Hertz repeats and re-alleges the allegations contained in the paragraphs above, as if

fully set forth herein.

82.    Hertz is the legal owner of the Subject Vehicles.

83.    The Subject Vehicles are titled to Hertz.

84.    The Subject Vehicles are not titled to Defendant.

85.    Defendant never received consent from Hertz to tow the Subject Vehicles and has wrongfully exercised dominion

86.    Defendant has been in wrongful possession of the Subject Vehicles beginning at least since May 5, 2026, against Hertz's ownership rights in the Subject Vehicles.

87.    Defendant's continued possession of Hertz's property interferes with Hertz's rightful enjoyment, benefit, and use of the Subject Vehicles.

88.    Defendant has refused to return the Subject Vehicles to Hertz.

89.    Defendant's continued possession of Hertz's property constitutes conversion.

## COUNT IV – TRESPASS TO CHATTELS

90.    Hertz repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

91.    Defendant has refused to give Hertz access to the Subject Vehicles.

92.    Hertz has not permitted Defendant to maintain possession of the Subject Vehicles.

93.    Hertz maintains legal ownership of the Subject Vehicles.

94.    Defendant has wrongfully maintained possession to the Subject Vehicles at least since May 5, 2026.

95.    Defendant's wrongful continued possession of Hertz's property, the Subject Vehicles, constitutes trespass to chattels.

## PRAYER FOR RELIEF

## INJUNCTIVE RELIEF

- 15 -

**WHEREFORE**, Plaintiff Hertz Vehicles LLC respectfully requests that this Court enter judgment in its favor and against Defendant MVA Storage, LLC, and grant the following relief:

A.  An order declaring that Hertz has and always has had the sole and exclusive right to possess the Subject Vehicles, that Defendant has never had any lawful possessory interest in the Subject Vehicles, that Hertz owes no towing, storage, repair, or related charges to Defendant, and that Defendant may not condition the return of the Subject Vehicles on the payment of any such charges;

B.  Enter a preliminary and permanent injunction requiring Defendant to immediately release and return all Subject Vehicles owned by Hertz, and enjoining Defendant from retaining, using, interfering with, exercising control over, or otherwise withholding any property belonging to Hertz;

C.  Enter judgment in favor of Hertz and against Defendant on Count II for Unfair Trade Practices in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 through 201-9.2

D.  Award Hertz treble damages as permitted by law based on Defendant's willful, knowing, and intentional violations of 73 P.S. §§ 201-1 through 201-9.2;

E.  Award Hertz its reasonable attorneys' fees, costs, expenses, and other recoverable litigation expenses incurred as a result of Defendant's unlawful conduct and violations of 73 P.S. §§ 201-1 through 201-9.2;

F.  Enter judgment in favor of Hertz and against Defendant on Count III for Conversion;

G.  Enter judgment in favor of Hertz and against Defendant on Count IV for Trespass to Chattels;

H.  Award Hertz compensatory, consequential, incidental, and all other damages proven at trial; and

I.  Grant such other and further relief as this Court deems just and proper.

DATED:  July 15, 2026                          Respectfully submitted,

                                               SEYFARTH SHAW LLP


                                               By:*/s/ Jacob Oslick*
                                                   Jacob Oslick (Pa. Bar No. 311028)
                                                   joslick@seyfarth.com
                                                   SEYFARTH SHAW LLP
                                                   620 Eighth Avenue
                                                   New York, New York 10018
                                                   Telephone: (212) 218-5500
                                                   Facsimile: (212) 218-5526

                                                   *Attorneys for Plaintiff Hertz Vehicles LLC*